1

2

3

4

5

6

7

8                         UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    ANTOINE L. ARDDS,                          No.  2:20-cv-0133 TLN KJN P

12                    Plaintiff,

13           v.                                   FINDINGS AND RECOMMENDATIONS

14    KENNETH MARTIN, et al.,

15                    Defendants.

16

17          Plaintiff, a state prisoner, proceeds pro se and in forma pauperis with a civil rights action

18    pursuant to 42 U.S.C. § 1983.  Plaintiff alleges that defendants Lewis, Martel, Martin, Eldridge,

19    and Kieu violated plaintiff's First and Eighth Amendment rights.  Before the court is defendants'

20    motion for summary judgment on exhaustion grounds.  For the reasons set forth below, the

21    undersigned recommends defendants' motion be partially granted.

22                                    BACKGROUND

23          Plaintiff's original complaint was signed and presented to prison staff for mailing on

24    December 5, 2019 (ECF No. 1 at 30), and scanned and e-filed on January 17, 2020, at California

25    Medical Facility (ECF No. 1-1).

26          This case proceeds on plaintiff's verified amended complaint, filed on June 25, 2020.

27    (ECF No. 15.)  Plaintiff alleges that between August 27, 2019, and November 26, 2019,

28    defendants Acting Lt. Lewis, Acting Warden Martel, Chief Executive Officer Martin, Acting

1

1   Warden Eldridge, and Psychologist Kieu were deliberately indifferent to plaintiff's serious mental

2   health needs, and failed to protect plaintiff from a substantial risk of harm, in violation of the

3   Eighth Amendment, and retaliated against plaintiff in violation of the First Amendment, by

4   removing him from necessary mental health care, because plaintiff initiated and maintained

5   misconduct complaints; and on September 6, 2019, defendant Lewis retaliated against plaintiff

6   for filing civil actions and staff misconduct complaints by revealing privileged information to

7   incite an inmate attack on plaintiff.  (ECF No. 15.)  Plaintiff includes a state law claim alleging

8   negligent failure to protect by defendants Martel, Martin, and Eldridge. (ECF No. 15 at 25.)

9          On August 11, 2021, defendants filed an answer.  (ECF No. 34.)

10          On October 22, 2021, defendants filed the instant motion for summary judgment.  (ECF

11   No. 36.)  In their motion, defendants argue this action should be dismissed because plaintiff failed

12   to exhaust his administrative remedies prior to filing this suit.  Plaintiff filed an opposition and

13   defendants filed a reply.  (ECF Nos. 41, 42.)

14                              MOTION FOR SUMMARY JUDGMENT

15   I.  Summary Judgment Standards

16          Summary judgment is appropriate when it is demonstrated that the standard set forth in

17   Federal Rule of Civil Procedure 56 is met.  "The court shall grant summary judgment if the

18   movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

19   judgment as a matter of law."  Fed. R. Civ. P. 56(a).

20                    Under summary judgment practice, the moving party always bears
       the initial responsibility of informing the district court of the basis
21       for its motion, and identifying those portions of "the pleadings,
       depositions, answers to interrogatories, and admissions on file,
22       together with the affidavits, if any," which it believes demonstrate
       the absence of a genuine issue of material fact.
23

24   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P.

25   56(c)).  "Where the nonmoving party bears the burden of proof at trial, the moving party need

26   only prove that there is an absence of evidence to support the non-moving party's case."  Nursing

27   Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376,

28   387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory

                                              2

committee's notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1575 (9th Cir. 1990).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

////

3

1  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

2  amendments).

3      In resolving a summary judgment motion, the court examines the pleadings, depositions,

4  answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R.

5  Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at

6  255.  All reasonable inferences that may be drawn from the facts placed before the court must be

7  drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587; Walls v. Central Costa

8  County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011).  Nevertheless, inferences are not

9  drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from

10  which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224,

11  1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a

12  genuine issue, the opposing party "must do more than simply show that there is some

13  metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead

14  a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"

15  Matsushita, 475 U.S. at 586 (citation omitted).

16      By contemporaneous notice provided on October 22, 2021 (ECF No. 36-1), plaintiff was

17  advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal

18  Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc);

19  Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

20  II.  Legal Standards for Exhaustion of Administrative Remedies

21      A.  PLRA Exhaustion Requirement

22      The Prison Litigation Reform Act of 1995 (PLRA) mandates that "[n]o action shall be

23  brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a

24  prisoner confined in any jail, prison, or other correctional facility until such administrative

25  remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Compliance with deadlines and

26  other critical prison grievance rules is required to exhaust.  Woodford v. Ngo, 548 U.S. 81, 90

27  (2006) (exhaustion of administrative remedies requires "using all steps that the agency holds out,

28  and doing so properly").  "[T]o properly exhaust administrative remedies prisoners 'must

4

1    complete the administrative review process in accordance with the applicable procedural rules,' --

2    rules that are defined not by the PLRA, but by the prison grievance process itself." Jones v.

3    Bock, 549 U.S. 199, 218 (2007) (quoting Woodford v. Ngo, 548 U.S. at 88); see also Marella v.

4    Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements

5    'define the boundaries of proper exhaustion.'") (quoting Jones, 549 U.S. at 218).

6        "[T]the PLRA's exhaustion requirement applies to all inmate suits about prison life."

7    Porter v. Nussle, 534 U.S. 516, 532 (2002).  As stated in the statute, "[t]he PLRA requires that an

8    inmate exhaust only those administrative remedies 'as are available.'" Sapp v. Kimbrell, 623

9    F.3d 813, 822 (9th Cir. 2010) (quoting 42 U.S.C. § 1997e(a)) (administrative remedies plainly

10   unavailable if grievance was screened out for improper reasons); see also Nunez v. Duncan, 591

11   F.3d 1217, 1224 (9th Cir. 2010) ("Remedies that rational inmates cannot be expected to use are

12   not capable of accomplishing their purposes and so are not available.").  "We have recognized

13   that the PLRA therefore does not require exhaustion when circumstances render administrative

14   remedies 'effectively unavailable.'" Sapp, 623 F.3d at 822 (citing Nunez, 591 F.3d at 1226);

15   accord Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) ("The obligation to exhaust 'available'

16   remedies persists as long as some remedy remains 'available.'  Once that is no longer the case,

17   then there are no 'remedies . . . available,' and the prisoner need not further pursue the

18   grievance.").

19       Dismissal of a prisoner civil rights action for failure to exhaust administrative remedies

20   must generally be brought and decided pursuant to a motion for summary judgment under Rule

21   56, Federal Rules of Civil Procedure.  Albino v. Baca, 747 F.3d 1162, 1168 (9th Cir. 2014) (en

22   banc).  "Nonexhaustion" is "an affirmative defense" and defendants have the burden of

23   "prov[ing] that there was an available administrative remedy, and that the prisoner did not

24   exhaust that available remedy." Id. at 1171-72.  A remedy is "available" where it is "capable of

25   use; at hand." Williams v. Paramo, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting Albino, 747

26   F.3d at 1171).  Grievance procedures that do not allow for all types of relief sought are still

27   "available" as long as the procedures may afford "some relief." Booth v. Churner, 532 U.S. 731,

28   738 (2001).  If a defendant meets the initial burden, plaintiff must "come forward with evidence

1    showing that there is something in his particular case that made the existing and generally

2    available administrative remedies effectively unavailable to him." <u>Albino</u>, 747 F.3d at 1172.

3        The Supreme Court identified three situations in which administrative remedies are

4    "unavailable" within the meaning of the statute.  First, an "administrative procedure is

5    unavailable when (despite what regulations or guidance materials may promise) it operates as a

6    simple dead end -- with officers unable or consistently unwilling to provide any relief to

7    aggrieved inmates." <u>Ross v. Blake</u>, 136 S. Ct. 1850, 1859 (2016) (citing <u>Booth</u>, 532 U.S. at 736,

8    738).  Second, "an administrative scheme might be so opaque that it becomes, practically

9    speaking, incapable of use.  In this situation, some mechanism exists to provide relief, but no

10   ordinary prisoner can discern or navigate it." <u>Id.</u> at 1859.  Third, "when prison administrators

11   thwart inmates from taking advantage of a grievance process through machination,

12   misrepresentation, or intimidation," the administrative remedy is effectively unavailable. <u>Id.</u> at

13   1860 (citing <u>Woodford v. Ngo</u>, 548 U.S. at 102).  "[T]he ultimate burden of proof remains with

14   the defendant." <u>Albino</u>, 747 F.3d at 1172.

15       B.  <u>California's Inmate Appeal Process</u>

16       The State of California provides its inmates and parolees the right to administratively

17   appeal ''any policy, decision, action, condition, or omission by the department or its staff that the

18   inmate or parolee can demonstrate as having a material adverse effect upon his or her health,

19   safety, or welfare.'' Cal. Code Regs. tit. 15, § 3084.1(a).[1]  California prisoners are required to

20   lodge their administrative complaint on a CDCR-602 form (or a CDCR-602 HC form for a health

21   care matter), which instructs the inmate to describe the problem and outline the action requested.

22       California regulations distinguish prisoners' health care appeals from other types of

23   grievances.  Health care appeals are governed by Title 15 of the California Code of Regulations,

24   Article 5, § 3999.225, et seq.  The health care grievance process provides an administrative

25   remedy "for review of complaints of applied health care policies, decisions, actions, conditions,

26   ////

---

[1]  The regulations cited herein were in effect at all times relevant herein (in 2019).  Subsequently, on March 25, 2020 (effective June 1, 2020), California Code of Regulations, title 15, sections 3084 through 3084.9 were repealed, and replaced and renumbered with amended sections 3480 through 3487.

1    or omissions that have a material adverse effect on [prisoners'] health or welfare."  Cal. Code

2    Regs. tit. 15, § 3999.226(a).

3         The amount of detail in an administrative grievance necessary to properly exhaust a claim

4    is determined by the prison's applicable grievance procedures.  Jones, 549 U.S. at 218; see also

5    Sapp, 623 F.3d at 824 (''To provide adequate notice, the prisoner need only provide the level of

6    detail required by the prison's regulations'').  In submitting a health care grievance, an inmate is

7    required to "document clearly and coherently all information known and available to him or her

8    regarding the issue" and identify the staff member involved.  Cal. Code Regs. tit. 15,

9    § 3999.227(g).  The appeal should not involve multiple issues that do not derive from a single

10   event.  Id. § 3999.227(e).  An inmate has thirty calendar days to submit the appeal from the

11   occurrence of the action or decision being appealed or from "[i]nitial knowledge of the action or

12   decision being grieved."  Id. § 3999.227(b).

13        The regulations provide for two levels of review for a health care appeal.  First, an inmate

14   who files a health care grievance will receive review at the institutional level.  Cal. Code Regs. tit.

15   15, § 3999.226(a)(1).  Institutional level responses must be completed within forty-five business

16   days of receipt.  Id. § 3999.228(i).  If a prisoner is dissatisfied with the institutional level

17   response, he may appeal the disposition to the second level or headquarters' level review.  Id.

18   § 3999.229(a).  Headquarters level review must be completed within sixty business days of

19   receipt.  Id. at § 3999.230(f).  "The headquarters' level review constitutes the final disposition on

20   a health care grievance and exhausts administrative remedies."  Id. § 3999.230(h).  The

21   exhaustion requirement is echoed in subsection (g):

22           Health care grievances are subject to a headquarters' level
              disposition before administrative remedies are deemed exhausted
23           pursuant to section 3999.230.  A health care grievance or health care
              grievance appeal rejection or withdrawal does not exhaust
24           administrative remedies.

25   Id. § 3999.226(g).

26   III.  Undisputed Facts re Exhaustion

27        Defendants filed a Statement of Undisputed Facts as required by Local Rule 260(a).  (ECF

28   No. 36-2.)  Plaintiff filed an opposition, but did not include a separate statement of undisputed

facts.  (ECF No. 41.)  Rather, plaintiff included a "statement of facts" within his verified

opposition (ECF No. 41 at 3-8), and included a separate statement of disputed facts (ECF No. 41

at 47-49).  After review of the parties' briefing, the undersigned finds the following facts are

undisputed for purposes of this motion for summary judgment:

1.  At all times relevant herein, plaintiff was a state prisoner in the custody of California

Department of Corrections and Rehabilitation ("CDCR"), and housed at the California Health

Care Facility ("CHCF").

2.  At all relevant times, defendants Lewis, Martel, Martin, Eldridge, and Kieu were

employed as prison officials at CHCF.

3.  Since March 2008, plaintiff exhausted twenty-six non-health care administrative

grievances (none of which originated at CHCF) through the third level of review.  (ECF No. 36-3

at 3 ¶ 8; 5-9 (Ex. A).)  Since 2017, plaintiff exhausted ten health care grievances through the

headquarters' level of review.  (ECF No. 36-4 at 7-18.)

4.  From August 27, 2019 (the date plaintiff contends defendants began to violate

plaintiff's constitutional rights), plaintiff submitted six non-health care and health-care grievances

which were potentially related to plaintiff's allegations.

5.  Only one of those six grievances, CHCF-HC-19-002669, which mentions only

defendant Martin by name, was exhausted through the third level of review.[2]  Grievance CHCF-

HC-19-002669 was exhausted on May 22, 2020, after he filed the instant lawsuit on January 17,

2020, but before he filed the operative first amended complaint on June 25, 2020.[3]

6.  Health Care Grievance CHCF-HC-19-002669, stamped received on October 22,

_____

[2] In his verified first amended complaint, plaintiff lists a number of grievances following his
claim that all administrative remedies are exhausted:  CHCF B-19-3813; CHCF HC-19-2388;
CHCF-HC-17-0425; CHCF-A-17-3424; CHCF DSH-17-0283; CHCF DSH-HC-17-0657; CHCF-
HC-19-0091.  (ECF No. 15 at 15.)  However, grievances filed in 2017 (indicated by "17"
following the location where grievance filed) predate the 2019 incidents at issue here.

[3] In his verified opposition, plaintiff reiterated that in his first amended complaint he alleged that
he filed "several grievances" at CHCF and "all administrative remedies are exhausted."  (ECF
No. 41 at 3.)  But he added that grievance CHCF-HC-19-002669 demonstrates such exhaustion.
(ECF No. 41 at 3, citing ECF No. 15 (First Amended Complaint).)

8

2019, was signed and dated by plaintiff on October 21, 2019.  (ECF No. 36-4 at 22.)  Plaintiff

complained about "intentional discriminatory acts and lack of access to programs, activities,

treatment, services, and benefits under the ADA and the Rehabilitation Act," which had "an

adverse effect upon [his] mental health stability."  (ECF No. 36-4 at 22.)  Plaintiff further claimed

that:

> During his stay in the Psychiatric Inpatient Program ("PIP") at CHCF, defendant CEO
> Martin, and nonparties Programs Administrator Villareal, Staffing Supervisor Asbaley Roler,
> Program Director Kara Trammel and Rena Juhl ("CNS") denied plaintiff full participation in the
> broad range of mental health services due to their failure to provide adequate staffing to maintain
> such services.  (Id.)  On September 17-19, 2019, the Coleman class special master's team and
> CDCR's team agreed that CHCF-PIP mental health care is a "disaster" and a new program was
> implemented on October 19, 2019, but supervisors continue to fail to establish or facilitate
> appropriate staffing to protect the safety for patients and staff, or to maintain the needed mental
> health services to provide the required treatment or therapy.  (ECF No. 36-4 at 24.)  From
> October 14 to October 21, 2019, plaintiff was denied therapeutic groups and RT groups by PT
> Garcia, who retaliated against plaintiff for requesting such groups.  On October 16 to 20, 2019,
> the second and third watch RN or PT groups were not held.  The failure to hold the third watch
> groups was due to staff shortage and overcrowding, which plaintiff contended increased the level
> of violence, constituting an Eighth Amendment violation, and plaintiff was also denied law
> library access.  (ECF No. 36-4 at 24.)

Plaintiff submitted a request for interview concerning delivery of his appeal, and on

February 25, 2020, nonparty staff member S. Pech responded:

> Your 602HC was rec'd on 10/22.  It has been accepted and
> process[ed] with log # CHCF HC 19002669.  On or about 2/25/20 a
> delay notice was mailed to you via mail.

(ECF No. 41 at 117.)

Plaintiff was interviewed on March 5, 2020.  On March 6, 2020, an institution level

response by Program Director E. Burwell described plaintiff's issue as "Mental Health (Therapy);

plaintiff was being denied treatment due to staff shortages and sought remedy.  (ECF No. 36-4 at

26.)  The response noted that on March 5, 2020, plaintiff was interviewed by R. Cunningham, program assistant director.  Burwell found no intervention was required because based on a confidential inquiry there was no evidence that plaintiff was not provided treatment or that a policy or procedure was violated.  Plaintiff was enrolled in the mental health services delivery system at the Psychiatric Inpatient Program acute level of care, and Burwell found plaintiff was provided with the opportunity to access mental health services and clinical staff regarding his stated issues.  Burwell noted that while plaintiff's personal preferences may be considered, and his participation is included in the Interdisciplinary Treatment Team, unanimity in treatment decisions is not required.  (ECF No. 36-4 at 27.)

In his request for headquarters review, plaintiff noted that he filed his grievance on October 21, 2019, but did not receive a response until March 12, 2020.  (ECF No. 36-4 at 23.)  During this delay, he continued to request that the grievance be processed, only to be told they were backlogged.  Plaintiff explained that he had already filed a civil case due to the five-month delay which rendered his administrative remedies unavailable.  (ECF No. 36-4 at 25.)  He also claimed he was never provided the mental health treatment he was sent to receive, but was only punished and confined in his cell for speaking out.  (ECF No. 36-4 at 23.)

On May 22, 2020, S. Gates, Chief, Health Care Correspondence and Appeals Branch, identified plaintiff's disagreement with mental health treatment as being denied treatment due to staff shortages, but added that plaintiff alleged on October 14-21, 2019, he was denied groups, and further alleged that the psychiatric technician retaliated against plaintiff for requesting groups.  (ECF No. 36-4 at 20.)  Gates noted plaintiff's complaint concerning the denial of library access was not in their jurisdiction because it was a non-medical custody issue.  (Id.)

Gates found no intervention was needed, reiterating that unanimity in treatment decisions is not required, and noting that plaintiff's placement in the PIP from August 27 to November 26, 2019, involved acute mental health care where "the main purpose is to promote the safety of the patient," resulting in "limited services available to minimize the danger to the patient, staff, and other inmates."  (ECF No. 36-4 at 21.)  Gates stated that review of plaintiff's health record indicated plaintiff was scheduled for therapy and registered nurse groups for the period October

14-21, 2019, and the details provided by plaintiff in conjunction with review of plaintiff's health

record did not support plaintiff's claim that the psychiatric technician retaliated against plaintiff.

7.  From August 27, 2019, plaintiff submitted four reasonable accommodation requests.[4]

Plaintiff did not pursue accommodation requests CHCF-19-4646, CHCF-19-4387, and CHCF-19-

4171 by filing subsequent administrative grievances.  (ECF No. 36-5 at 5-6 ¶¶ 17, 19, 20.)

Plaintiff subsequently filed a grievance challenging the disposition of his reasonable

accommodation request CHCF-19-3813.  (ECF No. 36-5 at 4 ¶¶ 15, 18.)

8.  On October 14, 2019, plaintiff appealed the Reasonable Accommodation Panel

("RAP") decision in CHCF-19-3813 by submitting a non-health care grievance, assigned log

number CHCF-19-04266.[5]  In grievance CHCF-19-04266, plaintiff claimed he was not able to

fully participate in mental health services due to staff shortages and overcrowding; he was

confined to his cell from August 28 to October 7, 2019; and on September 17, 2019, during a

special master's visit, plaintiff attempted to commit suicide and defendant Kieu did not intervene.

(ECF No. 36-5 at 5-6 ¶ 18.)  Grievance CHCF-19-04266 was forwarded to the appropriate unit

for review, where it was converted into two health care grievances and assigned log numbers

CHCF-HC-19-002806 and CHCF-HC-19-002498.

9.  Grievance CHCF-HC-19-002806, stamped received October 14, 2019, was dated

October 10, 2019, by plaintiff, who alleged he was confined to his cell from August 28 to October

7, 2019, without any treatment by his clinician, defendant Kieu, and on September 17, 2019,

during the Coleman special master's visit, plaintiff was "slicing his throat" in the presence of

defendant Kieu, who did nothing to notify medical or custody staff.  (ECF Nos. 36-4 at 3, 4; 32-

40; 36-5 at 5-6.)  Plaintiff was interviewed on March 5, 2020.  The institutional level found no

---

[4]  Reasonable accommodation requests are not administrative appeals, although such requests are tracked using the same system as administrative grievances at CHCF.  Cal. Code Regs. Tit. 15, §§ 3084 et. seq., 3085, 3086 (2019).

[5]  In his request for accommodation CHCF-19-3813, plaintiff alleged he was being denied mental health treatment by his treatment team, including defendant Kieu.  On September 19, 2019, plaintiff's request was partially granted by a RAP elevating plaintiff's allegations to the PIP management for further review and disposition.  (ECF No. 36-5 at 4 ¶ 15.)

intervention necessary because plaintiff's health record reflected plaintiff's treatment team provided a treatment plan and weekly treatment sessions and meetings with his interdisciplinary treatment team.  (ECF No. 36-4 at 33.)  Plaintiff did not pursue grievance CHCF-HC-19-002806 through headquarters' review.  (ECF No. 36-4 at 10-11.)

10.  Grievance CHCF-HC-19-002498 was stamped received October 3, 2019, and again on October 30, 2019.  The grievance was initially dated September 11, 2019, by plaintiff, who alleged that defendant Kieu and other nonparty individuals "refused to provide any of the broad range of mental health services."  (ECF No. 36-4 at 75, 77, 79.)  Plaintiff stated he was "placed on 'DPS' for advocating for [his] mental health treatment and addressing 'PREA' issues."  (ECF No. 36-4 at 81.)  He noted that on September 11, 2019, he submitted an inmate request for interview for documents of retaliatory actions taken by defendant Kieu and other nonparties. (ECF No. 36-4 at 81.)  This appeal was initially screened out on October 24, 2019, noting plaintiff included multiple issues and was missing necessary details.  (ECF No. 36-4 at 10, 86.) Plaintiff resubmitted the grievance and was interviewed on March 5, 2020.  (ECF No. 36-4 at 72.) On March 10, 2020, the institutional level review found no intervention was necessary, noting several services and programs were available to plaintiff, who attended recreational therapy, unit-programming, and anger management groups.  (Id.)  Plaintiff did not obtain headquarters' review. (ECF No. 36-4 at 10.)[6]

11.  Grievance CHCF-HC-19-002388, stamped received on September 11, 2019, was dated September 10, 2019, by plaintiff, who alleged he was unable to fully participate in the broad range of mental health services "due to shortage of staff and overcrowding."  (ECF No. 36-4 at 98.)  Plaintiff complained that the administrator failed to ensure that each CNA, LVN, RN, PT or custody staff are properly trained to recognize signs and symptoms associated with suicide risk or appropriate staff intervention. (ECF No. 36-4 at 100.)  Plaintiff also alleged that an officer

---

[6] Plaintiff claims that grievance CHCF-HC-19-002498 was exhausted at the headquarters' level of review, citing his Ex. D.  (ECF No. 41 at 33.)  However, none of the documents in plaintiff's Exhibit D bear the number CHCF-HC-19-002498.  (ECF No. 41 at 144-69.)  In addition, plaintiff fails to rebut defendants' evidence that Grievance CHCF-HC-19-002669 was the only health care grievance plaintiff exhausted to the headquarters' level of review.

revealed plaintiff's commitment offense to another inmate, and a non-party staff member used profanity and was not professional in interactions with plaintiff.  (Id.)  On October 16, 2019, the institutional level rejected the grievance because it contained multiple issues, was missing necessary details, and included non-health care issues.  (ECF No. 36-4 at 96.)  Plaintiff was informed that allegations concerning a correctional officer must be directed through appropriate channels.  (Id.)  Plaintiff was directed to take the necessary corrective action and resubmit the grievance within 30 calendar days.  (ECF No. 36-4 at 97.)  Plaintiff did not re-submit his grievance for review or obtain a headquarters' level decision.  (ECF No. 36-4 at 11.)

12.  Grievance CHCF-HC-19-002452, stamped received on October 4, 2019, was dated September 13, 2019, by plaintiff, who alleged he was not able to fully participate in the broad range of mental health services due to staff shortages and overcrowding.  (ECF No. 36-4 at 55.)  Plaintiff complained he had been confined to his cell from August 27, 2019, to September 13, 2019, without any set treatment plan from defendant Kieu, and only received reprisals for filing complaints about inadequate treatment.  (Id.)  Further, staff was not properly trained to recognize signs and symptoms of suicide risk or appropriate staff intervention or failure to follow proper procedures in response to plaintiff's September 17, 2019, attempted suicide.  Plaintiff also alleged staff members were overworked and often fell asleep as a result.  (Id.)  On November 12, 2019, the grievance was rejected at the institutional level based on multiple issues and lack of necessary details.  (ECF No. 36-4 at 53.)  Plaintiff was directed to take the suggested corrective actions and resubmit the health care grievance within thirty days.  (ECF No. 36-4 at 54.)  Plaintiff did not re-submit his grievance for review or obtain a headquarters' level decision.  (ECF No. 36-4 at 11.)

13.  Grievance CHCF-HC-19-002909, stamped received October 23, 2019, was signed on September 13, 2019, by plaintiff who complained he was not able to fully participate in the broad range of mental health services due to staff shortages and overcrowding.  (ECF No. 36-4 at 46.)  He also alleged that since he arrived on August 27, 2019, he was confined to his cell without treatment by defendant Kieu or other staff, only receiving reprisals for filing complaints about inadequate treatment.  (Id.)  He alleged inadequate training to assess suicide risk and proper intervention, and again alleged staff members fell asleep at work due to being overworked.  (ECF

No. 36-4 at 48.)  Oddly, despite the grievance being signed by plaintiff on September 13, 2019, plaintiff mentions his September 17, 2019, suicide attempt.   (ECF No. 36-4 at 48.)  The second received date is stamped November 12, 2019.  (ECF No. 36-4 at 44.)  The disparity in dates continues:  the acceptance section cites February 25, 2020, as the date assigned, but January 21, 2020, as the date due.  (Id.)

Plaintiff was interviewed on March 6, 2020.  (ECF No. 36-4 at 42.)  On March 10, 2020, the institutional level review found no intervention was required because plaintiff's health records reflected plaintiff was seen at least once a week by psychiatry, had seven one to one sessions with a psychiatrist and five one to one sessions with a psychologist; participated in four psychology facilitated treatment groups, 12 rehabilitation therapist facilitated treatment groups and 11 RN facilitated treatment groups.  (Id.)  Plaintiff was advised that if he was dissatisfied with the institutional level response, he should submit the entire health care grievance package for headquarters' level review, and that the headquarters' level review would constitute the final disposition of the health care grievance and exhaust his administrative remedies.  (ECF No. 36-4 at 43.)  Plaintiff did not submit such grievance to headquarters for final review.  (ECF No. 36-4 at 10.)

14.  Grievance CHCF-HC-20-000548, was initiated by plaintiff as a non-health care grievance, CHCF-B-19-03866.  (ECF No. 36-4 at 65.)  The grievance is stamped received September 16, 2019; plaintiff signed the grievance on September 12, 2019, and alleged that "IDTT members . . .refused to provide any of the broad range of mental health services" which he alleged were unavailable "due to overcrowding and extreme staff shortages."  (ECF No. 36-4 at 66, 68.)  Plaintiff stated he had cut his neck on several occasions due to staff being overworked. (ECF No. 36-4 at 68.)   The grievance was forwarded to the proper unit for review on September 23, 2019, where it was assigned number CHCF-HC-20-000548.  Plaintiff was interviewed on March 5, 2020.  (ECF No. 36-4 at 61.)  On March 11, 2020, the institutional level review found no intervention was required, noting plaintiff's health records reflected the treatment team provided a treatment plan, weekly interdisciplinary treatment team and weekly treatment sessions. (ECF No. 36-4 at 61.)  Plaintiff was advised that if he was dissatisfied with the institutional level

14

response, he should submit the entire health care grievance package for headquarters' level review, and that the headquarters' level review would constitute the final disposition of the health care grievance and exhaust his administrative remedies.  (ECF No. 36-4 at 62.)  Plaintiff did not submit such grievance to headquarters for final review.  (ECF No. 36-4 at 9.)

Plaintiff's State Law Claims

15.  From 2009 to the present, plaintiff submitted seven government claims, none of which included plaintiff's factual allegations supporting his state law claims alleging negligent failure to protect by defendants Martel, Martin, and Eldridge occurring at CHCF in 2019.[7]  (ECF No. 37):

A.  In Claim 20010551, submitted November 23, 2020, plaintiff alleged that a fire erupted in another inmate's cell, causing Plaintiff to "black out" from smoke inhalation at California State Prison-Los Angeles County, on October 31, 2020.  (ECF No. 37 at 6-10 (Ex. A).)

B.  In Claim 20010559, submitted February 28, 2020, plaintiff claimed that an officer at California State Prison-Corcoran destroyed his personal and legal property on July 31, 2019.  (ECF No. 37 at 12-72 (Ex. B).)

C.  In Claim 20000496, submitted December 23, 2019, plaintiff alleged that a correctional officer at California State Prison-Corcoran used excessive force on him on August 9, 2019.[8]  (ECF No. 37 at 74-87 (Ex. C).)

D.  In Claim 20000497, submitted November 5, 2019, plaintiff claimed that a correctional officer cut plaintiff's wrists and veins with wire cutters at California State Prison-Corcoran, on June 22, 2019.[9]  (ECF No. 37 at 89-106 (Ex. D).)

_____

[7] As discussed below, the court takes judicial notice of certified records provided by the California Department of General Services.  (ECF No. 37 at 4-142.)

[8] The allegations raised in Claim 20000496 were asserted in Ardds v. Bobadilla, No. 1:20-cv-00887-DAD (SAB) (E.D. Cal.); on October 21, 2021, summary judgment was granted based on plaintiff's failure to exhaust administrative remedies prior to suit.  Id. (ECF No. 39).

[9] The allegations raised in Claim 20000497 were asserted in Ardds v. Hicks, No. 1:19-cv-01738-SAB (E.D. Cal.); on August 6, 2021, summary judgment was granted based on plaintiff's failure to exhaust administrative remedies prior to suit.  Id. (ECF No. 61).

E.  In Claim 18005983, submitted June 27, 2018, plaintiff alleged that he was deprived of adequate mental health services when he was housed at California Medical Facility between June 9 - 27, 2018.  (ECF No. 37 at 108-22 (Ex. E).)

F.  In Claim 16004799, submitted August 8, 2016, plaintiff claimed that officers at Salinas Valley State Prison assaulted him on February 5, 2016.[10]  (ECF No. 37 at 124-40 (Ex. F).)

G.  A certified copy of Claim 588378 is not available, but the certified records reflect the claim involved an incident on October 9, 2009, and DGS closed the claim on February 18, 2010.  (ECF No. 37 at 142-43 (Ex. G).)

The Instant Action

16.  Plaintiff presented his original complaint to prison staff for filing with the court on December 5, 2019.  (ECF No. 1 at 30.)

17.  Plaintiff presented his amended complaint to prison staff for mailing to the court on June 18, 2020.  (ECF No. 15 at 30.)

IV.  Discussion

A.  Claims Under § 1983

The undersigned finds that defendants have satisfied their initial burden of showing there is an administrative grievance process at CHCF, and that plaintiff only exhausted one grievance through the second level of review (UDF 6).

As noted by defendants, plaintiff argues both that he exhausted all of his claims through the headquarters' level of review, but also contends that administrative remedies were unavailable.  Therefore, the court turns to addressing the grievances plaintiff filed, as well as his arguments that such grievances exhausted his claims or that other issues rendered the administrative process unavailable.[11]

---

[10]  The allegations raised in Claim 16004799 were asserted in Ardds v. Pizano, No. 5:16-cv-01389-EJD (N.D. Cal.), on January 3, 2018, summary judgment was also granted based on plaintiff's failure to exhaust administrative remedies.  Id. (ECF No. 97.)

[11]  As noted by defendants, plaintiff also included arguments concerning the merits of his claims.  (See, e.g., ECF No. 41 at 8-12 (supervisory liability); 12-17 (qualified immunity), 20-22 (Eighth Amendment liability).  However, such arguments are not relevant to the issue of whether or not

16

1      1.  Grievance CHCF-HC-19-002669

2          It is undisputed that plaintiff only obtained a final level of review for grievance CHCF-

3      HC-19-002669, which was exhausted on May 22, 2020, after he filed the instant lawsuit but

4      before he filed the operative first amended complaint.  Plaintiff argues that prison officials unduly

5      delayed processing plaintiff's grievance, thus rendering administrative remedies unavailable.

6                          Did The Amended Complaint Raise New Claims?

7          As discussed above, prisoners are required to exhaust the available administrative

8      remedies prior to filing suit.  Jones, 549 U.S. at 211; McKinney v. Carey, 311 F.3d 1198, 1199-

9      201 (9th Cir. 2002) (per curiam).  If, however, a plaintiff files an amended complaint adding *new*

10     claims, the plaintiff may proceed on the new claims if those claims were fully exhausted before

11     tendering the amended complaint for filing.  Rhodes v. Robinson, 621 F.3d 1002, 1006-07 (9th

12     Cir. 2010) (emphasis added).  As long as those new claims are fully exhausted at the time the

13     amended complaint is filed, it does not matter whether the new claims arose before or after the

14     date on which the initial complaint was filed; the claims can proceed as long as they are *new*

15     *claims that were not alleged in the initial complaint* and are fully exhausted prior to the filing of

16     the amended complaint.  See Cano v. Taylor, 739 F.3d 1214, 1220-21 (9th Cir. 2014) (allowing

17     amended complaint to proceed on *new* claims that arose prior to the date on which the initial

18     complaint was filed) (emphasis added); Akhtar v. Mesa, 698 F.3d 1202, 1210 (9th Cir. 2012)

19     (allowing amended complaint alleging *new* claims that arose after the initial complaint was filed).

20         In his original complaint, plaintiff challenged the mental health care he received after

21     being transferred to the California Health Care Facility-PIP ("CHCF-PIP") unit on August 27,

22     2019.  (ECF No. 1.)  Plaintiff named at least thirteen defendants, ranging from the Executive

23     Officer, Program Directors and administrator; staffing, appeals and nursing coordinators; a

24     psychologist, recreational therapist, social worker and a correctional sergeant.  Plaintiff

25     complained that various prison staff impeded his ability to file inmate appeals.  In addition,

26     plaintiff alleged that the CHCF-PIP unit is seriously understaffed, claiming that the special master

27     _____

28     plaintiff exhausted his administrative remedies prior to filing this action.

in <u>Coleman v. Brown</u>, 2:90-cv-0520 KJM DB, declared the mental health care in the CHCF-PIP

to be "a disaster." (ECF No. 1 at 20, 29.)  Specifically, plaintiff alleged that on September 6,

2019, defendant Lewis revealed privileged information about plaintiff in front of another inmate

in retaliation for plaintiff filing a lawsuit against Lewis.  (ECF No. 1 at 15.)  Plaintiff also claimed

defendant Lewis retaliated against plaintiff for filing civil rights actions by attempting to incite

violence between the other inmate and plaintiff.  (<u>Id.</u> at 16.)  Plaintiff alleged that on October 10,

2019, defendant Lungren denied plaintiff "participation" in retaliation for plaintiff's

administrative grievances.  Plaintiff claimed that defendant Kieu ignored plaintiff "cutting his

neck" on September 17, 2019, during the <u>Coleman</u> special master's team and auditor's presence.

(ECF No. 1 at 18, 24-25.)

In his amended complaint, plaintiff repeated his allegations that between August 27, 2019,

and November 26, 2019, defendants were deliberately indifferent to plaintiff's serious mental

health needs, and failed to protect plaintiff from a substantial risk of harm, in violation of the

Eighth Amendment, and retaliated against plaintiff in violation of the First Amendment, by

removing him from necessary mental health care, because plaintiff initiated and maintained

misconduct complaints; defendant Kieu ignored plaintiff "cutting his neck" on September 17,

2019, during the <u>Coleman</u> special master's team and auditor's presence; and on September 6,

2019, defendant Lewis retaliated against plaintiff for filing civil actions and staff misconduct

complaints by revealing privileged information to incite an inmate attack on plaintiff.  (ECF No.

15.)

As argued by defendants, the undersigned finds that plaintiff did not include any new

claims in his amended complaint.  Because no new claims were included in the amended

pleading, plaintiff was required to exhaust his administrative remedies prior to bringing this

action.

<u>When Was The Original Complaint Filed?</u>

Administrative exhaustion is measured "at the time the action is filed."  <u>Andres v.</u>

<u>Marshall</u>, 867 F.3d 1076, 1079 (9th Cir. 2017).  A court action is filed when the prisoner

"submits" or "tender[s]" the complaint to the court, not when it is "formally filed" by the court

18

1    clerk, which can occur later.  See Vaden v. Summerhill, 449 F.3d 1047, 1150-51 (9th Cir. 2006).

2    Under the PLRA, prisoners must exhaust administrative remedies before filing a complaint;

3    exhausting available remedies during the course of the litigation does not comply.  McKinney,

4    311 F.3d at 1199-1200.  If a prisoner has not completed available administrative remedies prior to

5    filing the complaint, the court must dismiss the action without prejudice.  Id. at 1200-01.

6         Although electronically filed on January 17, 2020 (ECF No. 1-1), plaintiff's original

7    complaint and the accompanying proof of service are both dated December 5, 2019.  (ECF No. 1

8    at 28, 30.)  Applying the "prison mailbox rule," plaintiff's complaint was filed on December 5,

9    2019.  See Douglas v. Noelle, 567 F.3d 1103, 1106-07 (9th Cir. 2009) (a pro se prisoner's

10   pleading is deemed filed at the time he delivers it to prison authorities for forwarding to the court

11   clerk); see also Jenkins v. Johnson, 330 F.3d 1146, 1149 n.2 (9th Cir. 2003) (date petition is

12   signed may be considered earliest possible date an inmate could submit his petition to prison

13   authorities for filing under the mailbox rule).  Thus, plaintiff must have exhausted his

14   administrative remedies prior to December 5, 2019, the date plaintiff brought this action under the

15   mailbox rule.

16                    Was Grievance CHCF-HC-19-002669 Exhausted Prior to Filing?

17        Plaintiff's grievance CHCF-HC-19-002669 was accepted on October 22, 2019.  (UDF 6.)

18   Regulations required the institution to provide plaintiff with a decision within "45 business days"

19   from the day it was received.  Cal. Code Regs, tit 15, § 3999.228(i).  "Working days" or

20   "business days" are typically considered to be all days except Saturdays, Sundays, and holidays."

21   Joy v. King, 2019 WL 5063444, at *6 (E.D. Cal. Oct. 9, 2019), adopted, 2019 WL 6619291 (E.D.

22   Cal. Dec. 5, 2019).  Based on that standard, plaintiff should have expected an institutional level

23   decision by December 31, 2019.

24        However, plaintiff brought this action on December 5, 2019, seventeen working days

25   before the deadline for the institution to respond to grievance CHCF-HC-19-002669 had expired.

26   Because such grievance was still pending institutional review at the time he brought this action,

27   plaintiff fails to raise a triable issue of fact regarding the availability of the administrative remedy

28   with regard to grievance CHCF-HC-19-002669.

1       Moreover, even if the pendency of such appeal is disregarded because plaintiff went on to

2   request headquarters' review, plaintiff failed to obtain a headquarters' level of review prior to

3   bringing this action.  Rather, the headquarters' response was issued on May 22, 2020, after

4   plaintiff brought the instant action.  (UDF 5, 6.)[12]

5               2.  Additional Grievances Where Response Time Had Not Expired

6       In addition, the institutional response times for grievances CHCF-HC-19-002806, CHCF-

7   HC-19-002498, and CHCF-HC-19-002909 had not expired by December 5, 2019, the date

8   plaintiff brought this action.  As discussed above, prison officials had 45 business days to

9   respond.  The response deadlines for each grievance, deleting weekends and holidays, is

10  calculated below:

11      CHCF-HC-19-002806, stamped received October 14, 2019 (UDF 9); institutional

12  response due December 19, 2019.

13      CHCF-HC-19-002498 was initially stamped received on October 3, 2019 (UDF 10),

14  rejected on October 24, 2019, and it appears plaintiff resubmitted the grievance, at which time it

15  was stamped received October 30, 2019; institutional response due January 9, 2020.

16      CHCF-HC-19-002909, stamped received October 23, 2019 (UDF 13), institutional

17  response due December 20, 2019.

18      Because the deadlines for the health care grievance office ("HCGO") to respond to these

19  three grievances had not yet expired at the time plaintiff brought this action on December 5, 2019,

20  plaintiff failed to raise a triable issue of fact regarding the availability of administrative remedies

21  with regard to grievances CHCF-HC-19-002806, CHCF-HC-19-002498, and CHCF-HC-19-

22  002909.[13]  Rather, plaintiff was required to wait a reasonable time after the response time had

23  _____

24  [12] Plaintiff provided evidence that prison staff notified plaintiff of the subsequent delay in
    response to plaintiff's request for interview.  (ECF No. 41 at 117.)  In his opposition, plaintiff
25  contends that "responder never sent or mailed a delay notice (CDCR Form 695) to plaintiff" (ECF
    No. 41 at 39), but plaintiff does not acknowledge that he had received notice of the delay in
26  response to his request for interview.

27  [13] Plaintiff contends that CHCF-HC-19-002498 and CHCF-HC-19-002909 were processed on the
    same day, as shown by comparing the signatures by L. Taylor on March 6, 2020 and March 10,
28  2020, "well beyond CDCR time constraints for first level responses."  (ECF No. 41 at 5.)

1  expired before seeking court intervention.  See, e.g., Goolsby v. Cty. of San Diego, 2020 WL

2  1673036, at *6 (S.D. Cal. Apr. 6, 2020) (finding prisoner must wait "a reasonable amount of time

3  for a response to [his] grievance," before the failure to timely respond renders "relief at the

4  administrative level unavailable" for exhaustion purposes.); Rupe v. Beard, 2013 WL 2458398, at

5  *16 (E.D. Cal. June 6, 2013) (noting that a prisoner cannot file suit within "a mere one or two

6  days after an appeal-response deadline has passed" but that "after the inmate has waited a

7  reasonable period of time and has received no response or notice of delay, the failure by prison

8  officials to abide by inmate-grievance regulations must excuse the inmate's failure to exhaust;

9  otherwise, prison officials could indefinitely delay inmates from pursuing legal remedies simply

10  by ignoring all inmate appeals.")

11      Moreover, as argued by defendants, plaintiff failed to pursue such grievances through the

12  headquarters' level of review prior to bringing the instant action.

13      3.  Grievance CHCF-HC-20-000548

14      It is undisputed that plaintiff did not pursue grievance CHCF-HC-20-000548 through the

15  headquarters' level review.  (UDF 14.)  Thus, the issue is whether administrative remedies were

16  unavailable to plaintiff in connection with such grievance.

17      This grievance was initiated by plaintiff as a non-health care grievance, CHCF-B-19-

18  03866, which he labeled "Staff Complaint," and signed on September 12, 2019.  (ECF No. 36-4

19  at 65-66.)  The initial grievance CHCF-B-19-03866 was stamped received September 16, 2019,

20  but on September 23, 2019, plaintiff was notified that his "appeal issue should be submitted to the

21  appropriate CDCR unit for review," and that his "appeal has been forwarded to health care staff

22  for review and processing."  (ECF No. 36-4 at 65.)

23  _____

24  Plaintiff's argument is not clear, but does not address the issue that plaintiff filed this action
before the 45 business day response time had expired.  While plaintiff is correct that the

25  institutional response exceeded the January 9, 2020 response deadline, the response was pending
on December 5, 2019 when plaintiff tendered his original complaint to the court.  As to grievance

26  CHCF-HC-19-002498 plaintiff also argues that it took four months to assign a log number.  (ECF
No. 41 at 5.)  It is undisputed that this grievance was one separated from plaintiff's RAP CHCF-

27  19-3813 (UDF 8, 10), and some delay resulted from the subsequent rejection and resubmission of
the grievance.  But absent further factual support for plaintiff's conclusory argument, the

28  undersigned is unable to discern such four month delay in connection with CHCF-HC-19-002498.

Inexplicably, the grievance was not received by the HCGO until February 25, 2020, over five months after plaintiff signed his initial grievance.  (ECF No. 36-4 at 64.)  At that time, the grievance was assigned the number CHCF-HC-20-000548.  (ECF No. 36-4 at 64.)

Defendants fail to address or explain the lengthy delay.

Using September 23, 2019, as the received date, plaintiff could have expected a response by November 27, 2019, or shortly thereafter given a reasonable time to forward the appeal to HCGO, before the instant action was filed.  As set forth above, the institution was required to provide plaintiff with a decision within 45 business days from the day it was received.  Cal. Code Regs, tit 15, § 3999.228(i).  Thus, plaintiff should have expected an institutional level decision by November 20, 2019, which preceded December 5, 2019, the date plaintiff brought this action.  Instead, the institutional disposition did not issue until March 11, 2020, over two months (73 business days) later.

The Ninth Circuit has found that the prison's failure to timely respond interfered with the prisoner's ability to access the grievance process, rendering the grievance process effectively unavailable.  Andres, 867 F.3d at 1076.  "Delay in responding to a grievance . . . may demonstrate that no administrative process is in fact available."  Brown v. Valoff, 422 F.3d at 943 n.18.  When "prison officials improperly fail to process a prisoner's grievance, the prisoner is deemed to have exhausted available administrative remedies."  Andres, 867 F.3d at 1079.  "[W]here inmates take reasonably appropriate steps to exhaust but are precluded from doing so by a prison's erroneous failure to process the grievance, we have deemed the exhaustion requirement satisfied."  See Fordley v. Lizarraga, 18 F.4th 344, 352 (9th Cir. 2021) (citations omitted).

Here, the belated institutional disposition included no explanation for the lengthy delay.  Prison regulations provide very narrow exceptions to health care grievance process time limits.  Cal. Code Regs, tit 15, § 3999.233(a).[14]  Defendants provided no evidence that such delay

---

[14]  Such exceptions are permitted only when:  "(1) Grievant, staff, or witnesses are not available prior to the expiration of the response time limits to provide information to prepare the health care grievance or health care grievance appeal response.  (2) The complexity of the decision, action, or policy requires additional research.  (3) Involvement of other departments, agencies, or jurisdictions is necessary.  (4) A state of emergency requires the postponement of nonessential administrative decisions and actions pursuant to section 3383(a)."  Cal. Code Regs. tit. 15, §

1   involved any exception set forth in § 3999.233(a).  Indeed, defendants did not address the issue of

2   delay in their motion, or in reply to plaintiff's arguments concerning such delay.  Thus, the

3   undersigned finds that defendants failed to meet their burden as to grievance CHCF-HC-20-

4   000548.

5               What Claims Did Grievance CHCF-HC-20-000548 Include?

6          The court must now determine whether grievance CHCF-HC-20-000548 included the

7   claims plaintiff raised here such that it would suffice to exhaust the instant claims.

8          In the grievance, plaintiff alleged that "IDTT members . . . refused to provide any of the

9   broad range of mental health services" which he alleged were unavailable "due to overcrowding

10  and extreme staff shortages or the increase in violence."  (ECF No. 36-4 at 66, 68.)  Plaintiff

11  stated he had cut his neck on several occasions due to staff being overworked, and noted

12  employees suffered from sleep deprivation ostensibly from being overworked.  (ECF No. 36-4 at

13  68.)  In the institutional level response, the reviewer identified plaintiff's issue as "Mental Health

14  (Treatment Plan), and included the description:  "You stated you are seeking mental health

15  treatment (DBT, Anger Management, and Childhood Trauma)."  (ECF No. 36-5 at 61.)

16         On the other hand, in his verified amended complaint, plaintiff alleges that between

17  August 27, 2019, and November 26, 2019, defendants Acting Lt. Lewis, Acting Warden Martel,

18  Chief Executive Officer Martin, Acting Warden Eldridge, and Psychologist Kieu were

19  deliberately indifferent to plaintiff's serious mental health needs, and failed to protect plaintiff

20  from a substantial risk of harm, in violation of the Eighth Amendment, by failing to provide

21  appropriate and effective mental health care, and retaliated against plaintiff in violation of the

22  First Amendment, by removing him from necessary mental health care, because plaintiff initiated

23  and maintained misconduct complaints; and on September 6, 2019, defendant Lewis retaliated

24  against plaintiff for filing civil actions and staff misconduct complaints by revealing privileged

25  information to incite an inmate attack on plaintiff, and on September 17, 2019, several psychiatric

26  technicians informed defendant Kieu about plaintiff's attempts to end his life by slicing his throat

27  _____

28  3999.233.

                                    23

and hanging, but Kieu refused to summon emergency assistance because of the presence of auditors.  (ECF No. 15.)

First, despite noting in the "action requested" section that it is "against the law to retaliate against [plaintiff] for exercising [his] First Amendment right to redress the government through grievances" (ECF No. 36-4 at 68), grievance CHCF-HC-20-000548 did not raise any allegation that defendants Lewis, Kieu, or any IDTT member retaliated against plaintiff for filing administrative grievances.  Thus, such grievance would not exhaust plaintiff's retaliation claims included in his amended complaint, and such retaliation claims should be dismissed without prejudice based on plaintiff's failure to first exhaust administrative remedies.

Second, other than referencing "IDTT members," plaintiff identifies no prison staff by name in grievance CHCF-HC-20-000548.  Because prison officials would be aware of the identities of the members of plaintiff's IDTT, such reference is sufficient to exhaust plaintiff's Eighth Amendment claims as to those members.  However, it is unclear which, if any, of the individuals named as defendants herein were such members.  Therefore, plaintiff should be granted leave to file a second amended complaint in which he is permitted to name individuals who were members of such IDTT as defendants herein.

Third, in his amended complaint, plaintiff alleges that defendants Martin, Martel, Kieu, Lewis and Eldridge failed to take steps to ensure plaintiff received mental health treatment for his suicidal ideation, despite having knowledge of plaintiff's multiple complaints of inadequate staffing.[15]  (ECF No. 15 at 23-24.)  However, as set forth above, it is unclear whether defendants Martin, Martel, Kieu, Lewis or Eldridge were part of the IDTT referenced in grievance CHCF-HC-20-000548.  Plaintiff should be granted leave to amend to identify such members and set forth specific factual allegations contained in grievance CHCF-HC-20-000548.[16]

---

[15]  Plaintiff also alleged a negligent failure to protect based on the failure of defendants Martel and Eldridge to provide "the appropriate amount of staff personnel."  (ECF No. 15 at 25.)  However, negligence is insufficient to state an Eighth Amendment deliberate indifference claim.

[16]  Plaintiff is cautioned that he is granted leave to amend to allege only those factual allegations invoked through  grievance CHCF-HC-20-000548.  Plaintiff may not renew his allegations of retaliation or state law claims, and is not permitted to add new allegations or new individuals who

24

1

2      4. 2017 Grievances

3          Plaintiff also argues that his claims were exhausted through grievances CHCF-HC-

4      1700425 and CHCF-HC-17-000613, filed "almost two years before filing this civil suit." (ECF

5      No. 41 at 29, 33, 37.)  As argued by defendants, such argument is unavailing because the

6      incidents at issue herein took place in 2019, two years after plaintiff filed grievances in 2017.

7      Although plaintiff makes passing reference to such 2017 grievances in his amended complaint, in

8      this action plaintiff specifically challenges mental health care provided or not provided while

9      housed at CHCF between August and November of 2019.  (ECF No. 15 at 14, 16-17; 19, 20, 22-

10     23.)  Because plaintiff's allegations involve incidents occurring in 2019, grievances addressing

11     plaintiff's mental health care in 2017 cannot exhaust his instant claims.

12         5. Rejected Grievances

13         It is undisputed that grievances CHCF-HC-19-002388 and CHCF-HC-19-002452 were

14     rejected.  (UDF 11, 12.)  Plaintiff contends that his grievances were improperly screened out or

15     rejected.

16         "[I]mproper screening of an inmate's administrative grievances renders administrative

17     remedies effectively unavailable such that exhaustion is not required under the PLRA."  Sapp,

18     623 F.3d at 823.  To fall within this exception, a prisoner must show that (1) he actually filed a

19     grievance or grievances that, if pursued through all levels of administrative appeals, would have

20     sufficed to exhaust the claim he seeks to pursue in federal court; and (2) that prison officials

21     screened his grievance or grievances "for reasons inconsistent with or unsupported by applicable

22     regulations."  Id. at 823-24.

23         Here, the undisputed evidence shows that grievances CHCF-HC-19-002388 and CHCF-

24     HC-19-002452 were properly rejected because plaintiff included multiple issues and failed to

25     provide all relevant facts.[17]  (UDF 11, 12.)  See also Cal. Code Regs. tit. 15, §§ 3999.227(e), (g).

---

were not part of the IDTT referenced in grievance CHCF-HC-20-000548.

[17] Plaintiff contends, without evidentiary support, that his signature was forged allegedly to "cover up" and misrepresent facts by doctoring some of his grievances, claiming "sometimes we have to scratch a lie to find the truth."  (ECF No. 41 at 6.)  Plaintiff's conclusory allegations are difficult to parse, but he provides no evidence showing defendants' records are inaccurate.

Moreover, plaintiff was provided the grounds for such rejections.  (UDF 11, 12.)  There is no evidence that he was denied the opportunity to resubmit a rejected appeal or appeal a cancellation decision.  Indeed, he filed multiple grievances, and resubmitted one rejected appeal (UDF 10).  An inmate cannot demonstrate the unavailability of an administrative remedy if he cannot show that he tried to pursue available remedies for improperly screened appeals.  See Wilson v. Zubiate, 718 F. App'x 479, 481 (9th Cir. 2017), cert. denied, 138 S. Ct. 1567 (2018) (holding prisoner "had the possibility of appealing the cancellation decision and therefore cannot show that he was 'thwarted by improper screening.'").

Therefore, plaintiff fails to raise a triable issue of fact regarding the availability of the administrative remedy with regard to grievances CHCF-HC-19-002388 and CHCF-HC-19-002452.

### 6.  Other Forms of Notice

Plaintiff argues that he put prison officials on notice of his claims on multiple occasions using various methods.  (ECF No. 41 at 5, 29, 32, 37, 39.)  Plaintiff contends that he brought his allegations concerning defendants Martin, Martel and Eldridge to the attention of prison officials by completing a CDCR 22 request for interview and having the B2B Unit Supervisor forward plaintiff's complaint to the hiring authorities.  (ECF No. 41 at 5.)  Plaintiff also appended copies of CDCR 22 requests and other letters he wrote, including to other state agencies.  (ECF No. 41 at 99-114; 116-17; 125-41; 182, 186.)  Plaintiff submitted multiple requests for accommodation. (UDF 7.)  However, to the extent plaintiff argues such documents exhaust his administrative remedies because it put prison officials on notice of his issues, plaintiff is mistaken.

The United States Supreme Court requires prisoners to "properly exhaust administrative remedies" by following the procedural rules defined "by the prison grievance process."  Bock, 549 U.S. at 218.  Thus, it is the prison's requirements, not the PLRA, that defines the boundaries of proper exhaustion.  Akhtar, 698 F.3d at 1211 (citing Jones, 549 U.S. at 218) ("[T]he level of detail necessary in a grievance to comply with a prison's grievance procedures will vary from system to system and claim to claim[.]"); see also Woodford v. Ngo, 548 U.S. at 90-91 ("Proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out,

1   and doing so properly (so that the agency addresses the issues on the merits).'"").  According to

2   the CDCR's grievance procedures, request for interview forms (CDCR 22), sending complaints to

3   the hiring authority, or writing letters to other state agencies do not suffice to provide notice and

4   exhaust the administrative remedies.  At the time relevant here, CDCR's grievance system

5   required that all health care administrative grievances be submitted on CDCR Form 602 HC.  Cal.

6   Code Regs. tit. 15, § 3999.227(a).  The grievances were required to be submitted to the

7   institution's appeals coordinator first and second levels of review.  Cal. Code Regs. tit. 15,

8   §§ 3999.228, 3999.229.  In light of the prison's requirements, plaintiff's use of other methods to

9   notify prison officials, including his requests for accommodation CHCF-19-4646, CHCF-19-

10  4387, and CHCF-19-4171, did not exhaust administrative remedies.[18]

11      7. <u>Fear of Retaliation</u>

12      Plaintiff argues that the appeal procedure was effectively unavailable because he feared

13  retaliation.  (ECF No. 41 at 35, 36.)

14      "[A] prisoner is excused from the exhaustion requirement in circumstances where

15  administrative remedies are effectively unavailable, including circumstances in which a prisoner

16  has reason to fear retaliation for reporting an incident."  <u>Rodriguez v. Cty. of Los Angeles</u>, 891

17  F.3d 776, 792 (9th Cir. 2018) (citing <u>McBride v. Lopez</u>, 807 F.3d 982, 987 (9th Cir. 2015) ). "In

18  order for a fear of retaliation to excuse the PLRA's exhaustion requirement, the prisoner must

19  show that (1) 'he actually believed prison officials would retaliate against him if he filed a

20  grievance'; and (2) 'a reasonable prisoner of ordinary firmness would have believed that the

21  prison official's action communicated a threat not to use the prison's grievance procedure and

22  that the threatened retaliation was of sufficient severity to deter a reasonable prisoner from filing

23  a grievance.'"  <u>Id.</u> (citing <u>McBride</u>, 807 F.3d at 987).

24      Plaintiff fails to demonstrate that any defendant threatened retaliation relating to plaintiff's

25  use of the prison's grievance system, and therefore plaintiff failed to meet the <u>McBride</u> standard.

26

27  [18] Requests for accommodation can exhaust administrative remedies for purposes of bringing an
    ADA claim.  <u>See</u> <u>Butler v. Adams</u>, 397 F.3d 1181, 1183 (9th Cir. 2005).  But this action is not
28  proceeding on ADA claims.

1  Rather, plaintiff simply states, in conclusory terms, that he was retaliated against for filing

2  grievances.  But he does not provide specific factual allegations demonstrating such retaliation.

3  Moreover, plaintiff submitted a grievance to the third level of review in CHCF-HC-19-002669,

4  and the record reflects he filed multiple grievances as well as requests for interview complaining

5  about his issues with the mental health care treatment he was not receiving, all of which belies his

6  claim that he was deterred for fear of retaliation.  Plaintiff's allegations are nothing more than a

7  generalized and speculative fear of retaliation which fails to satisfy the McBride standard.

8         Moreover, while a substantive retaliation claim requires only a showing that the retaliatory

9  conduct had a "chilling effect" on a prisoner's protected conduct, see Rhodes, 408 F.3d at 568-59,

10  a prisoner seeking to excuse a failure to exhaust must show that the feared retaliation "actually

11  deterred" him from filing an appeal about the incident in question. See McBride, 807 F.3d at 988;

12  see also Garcia v. Heath, 2016 WL 4382684, at *11 (E.D. Cal. Aug. 17, 2016) (rejecting

13  plaintiff's argument that fear of retaliation excused nonexhaustion where plaintiff's evidence did

14  not show "direct connection" between alleged retaliatory conduct and failure to exhaust appeal),

15  report and recommendation adopted, 2016 WL 7451556 (E.D. Cal. Dec. 27, 2016).  Plaintiff's

16  evidence does not reflect a causal link between any retaliatory conduct and any particular appeal

17  omission.  Rather, plaintiff states that "even when administrative remedies became unavailable to

18  plaintiff through threats and retaliation . . . he exhaust[ed] them anyway." (ECF No. 41 at 1, 27.)

19  Indeed, plaintiff's exhibits demonstrate his continued advocacy on behalf of himself.  Thus,

20  plaintiff fails to raise a triable issue of fact regarding the administrative remedy's availability,

21  whether in general or with regard to any particular claim.

22         Finally, plaintiff argues that he made every effort to exhaust his administrative remedies

23  until such remedies became unavailable when he was directed "to give up and start over."  (ECF

24  No. 41 at 36-37) (quoting Snyder v. Riverside County, 819 F. App'x 514 (9th Cir. 2020).)  In

25  Snyder, the Ninth Circuit found that:

26         a reasonable factfinder could conclude that the last two levels of the
           grievance process were effectively unavailable to Snyder because,
27         once he reached that point in the process, he was directed by prisoner
           officials to essentially give up and start again.

28

Id. at 516.  While plaintiff claims, in conclusory fashion, that he was directed to give up and start over, he points to no specific evidence supporting such statement.  Moreover, plaintiff's case is not similar to the prisoner's situation in Snyder for several reasons.  First, in this case, plaintiff was required to grieve his allegations through only two levels of review:  institutional and headquarters.  In Snyder, the prisoner was required to exhaust his claims through four levels of review.  Id. at 516.  Second, in Snyder, the prisoner adduced evidence that in addition to not knowing the full appeals process, he was "'always' told to mark grievances as resolved and, if he was not satisfied at steps one and two, then to fill out another grievance," and it was not until after he filed the grievance at issue he "learned that the correct procedure was to appeal an unresolved grievance."  Id.  Here, there is no such evidence plaintiff was misinformed concerning the grievance process.  Third, unlike in Snyder, the appeals forms used at CHCF clearly informed plaintiff what to do if dissatisfied with the institutional response, as well as that the headquarters' level review constitutes the final disposition and exhausts administrative remedies.  (See, e.g., ECF No. 36-4 at 23, 27.)  Thus, plaintiff's reliance on Snyder is unavailing.

## 8.  Conclusion

In conclusion, plaintiff fails to demonstrate a material issue of fact exists regarding an excuse to the PLRA's exhaustion requirement as to all grievances except CHCF-HC-20-000548. Accordingly, defendants' motion for summary judgment should be partially granted.  Plaintiff should be granted leave to amend to raise only those Eighth Amendment claims arising from his allegations set forth in grievance CHCF-HC-20-000548 against only those individuals who were part of the IDTT referenced therein, and plaintiff's remaining § 1983 claims should be dismissed without prejudice.

## B.  State Law Claims

In his verified amended complaint, plaintiff claims that in 2019, defendants Martel, Martin, and Eldridge negligently failed to protect plaintiff in violation of California state law. (ECF No. 15.)  Defendants argue these state law claims are barred for failure to comply with California's Government Claims Act (Cal. Gov. Code § 911.2) because plaintiff did not file a claim with the Department of General Services within six months of accrual of the claims at

1    issue.

2                    Judicial Notice

3            In support of their motion, defendants request the court take judicial notice of the

4    following records from the California Department of General Services Government Claims

5    Program ("GCP"):   (1) a declaration from a legal analyst attesting that a search of the GCP's

6    Standardized Insurance Management System ("SIMS") computer database identifying seven

7    claims raised with the GCP by plaintiff; and (2) a certification from the GCP staff services

8    manager confirming that the Office of the Attorney General has read-only access to the GCP's

9    computer database.  (ECF No. 37 at 4, 5.)

10           A court may take judicial notice of facts "not subject to reasonable dispute."  Fed. R.

11   Evid. 201(b).  Whether a tort claim has been presented to a public entity is subject to judicial

12   notice.  See Duke Energy Trading and Marketing, L.L.C. v. Davis, 267 F.3d 1042, 1048 n.3 (9th

13   Cir. 2001) (taking judicial notice of statement of claim filed with the California Victim

14   Compensation and Government Claims Board); see also Elliott v. Amador Cnty. Unified Sch.

15   Dist., 2012 WL 5013288, at *7 (E.D. Cal. Oct. 17, 2012) (collecting cases).  Accordingly,

16   defendants' request for judicial notice is granted.  (ECF No. 37.)

17                California's Government Claims Act

18           A claimant must present a tort claim against a public entity or its employees to the

19   California Department of General Services no more than six months after the cause of action

20   accrues.  Cal. Gov't Code § 911.2.  A claimant may not file suit against the entity or its

21   employees until the claimant has presented a claim and the entity has either acted on the claim or

22   is deemed to have rejected it. Cal. Gov't Code § 945.4; State of California v. Superior Court

23   (Bodde), 90 P.3d 116, 119 (Cal. 2004) ("Under [the Government Claims Act], failure to timely

24   present a claim for money or damages to a public entity bars a plaintiff from filing a lawsuit

25   against that entity."). Compliance with the claims presentation requirement is an element of the

26   cause of action that a plaintiff must plead.  Bodde, 90 P.3d at 122.  Failure to allege facts

27   demonstrating or excusing compliance subjects a complaint to dismissal for failure to state a

28   claim.  Id.  This pleading requirement applies in federal court.  See Karim-Panahi v. Los Angeles

                                            30

1    <u>Police Dep't</u>, 839 F.2d 621, 627 (9th Cir. 1988) ("The amended complaint fails to allege

2    compliance with California tort claim procedures.  The district court properly dismissed the state

3    law tort claims.").

4           Plaintiff's verified amended complaint does not allege that he submitted a timely claim

5    pursuant to the Government Claims Act.  (ECF No. 15, passim.)  Plaintiff's opposition to the

6    motion for summary judgment failed to address defendants' evidence that plaintiff did not file a

7    government claim concerning the 2019 incidents alleged here.  Indeed, plaintiff did not address

8    his state law claims in his opposition.  (ECF No. 41 at 1-46.)  Because plaintiff did not plead

9    compliance with the Government Claims Act and the judicially noticeable facts establish that he

10   did not present his state law claims, the undersigned recommends dismissing plaintiff's state law

11   claims.

12          Accordingly, IT IS HEREBY ORDERED that:

13          1.  Defendants' request for judicial notice (ECF No. 37) is granted; and

14          2.  The Clerk of the Court is directed to send plaintiff the form for filing a civil rights

15   complaint.

16          Further, IT IS RECOMMENDED that:

17          1.  Defendants' motion for summary judgment (ECF No. 36) be granted in part and denied

18   in part;

19          2.  Plaintiff's retaliation claims be dismissed without prejudice;

20          3.  Plaintiff's state law claims be dismissed with prejudice; and

21          4.  Plaintiff be granted leave to file a second amended complaint to raise <u>only</u> Eighth

22   Amendment claims based on those allegations set forth in grievance CHCF-HC-20-000548

23   against <u>only</u> those individuals who were part of the IDTT referenced therein.

24          These findings and recommendations will be submitted to the United States District Judge

25   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

26   after being served with these findings and recommendations, either party may file written

27   objections with the court.  The document should be captioned "Objections to Magistrate Judge's

28   Findings and Recommendations."  Any response to the objections shall be filed and served within

fourteen days after service of the objections.  The parties are advised that failure to file objections

within the specified time may result in waiver of the right to appeal the district court's order.

<u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated:  April 27, 2022

/ardd0133.msj.fte

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

32